**In re Janet Sue TAGUE, Social Security No. 509–44–2311, Debtor.**

**TAGUE & BEEM, P.C., Plaintiff,**

v.

**Janet Sue TAGUE, Defendant.**

**Adv. No. 90–1539 PAC.
Bankruptcy No. 90–15055 RJB.**

United States Bankruptcy Court,
D. Colorado.

Sept. 26, 1991.

Nina A. Iwashko, Canges & Iwashko, Denver, Colo., for plaintiff.

Robert F. Carr, Denver, Colo., for defendant.

ORDER ON DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

PATRICIA A. CLARK, Bankruptcy Judge.

This matter comes before the Court on the motion of defendant Janet Tague, debtor in this Chapter 7 case, to dismiss the plaintiff's complaint, or in the alternative for summary judgment.

## I.

Plaintiff asserts claims pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6) challenging the dischargeability of a pre-petition judgment debt. The complaint is based on a state law cause of action. The complaint in the parties' civil action alleged defendant's conversion of checks belonging to plaintiff as the cause of actual damages sustained. Allegations of "theft" were also raised, but pertained only to plaintiff's claim for treble damages, costs and fees pursuant to a statute which provides the victim of criminal conduct with a private right to pursue a claim for punitive damages. Judgment entered on both damage claims in plaintiff's favor after trial to the court (April 11 judgment). The judgment awarded damages as they were pled in the underlying complaint, which was as two elements of a single claim for relief. An amended order of judgment noted defendant's liability for actual damages without any findings supporting the court's conclusion and awarded punitive damages pursuant to Section 18–4–405.[1] As to the punitive damages the court found specifically that defendant's conduct constituted "theft" as defined under Colorado law (June 8 Order). A subsequent order determined the amount of the attorneys' fees and costs awarded pursuant to Section 18–4–405 (July 17 Order). The court found that the various issues set forth in the claims for relief were "intertwined" with all the other issues in the case.[2]

The June 8 Order was the only "fact" alleged in plaintiff's initial complaint in this proceeding. Defendant's answer challenged the legal sufficiency of the complaint and moved for dismissal. At the hearing on the defendant's motion, counsel also addressed two additional arguments raised by defendant as alternative bases for summary disposition of plaintiff's claims: (1) the application of *res judicata* or collateral estoppel; and (2) the dischargeability of punitive damages as a matter of law. The Court directed counsel to brief their respective arguments and plaintiff was given leave to amend their complaint.

Plaintiff's amended complaint alleges in substance only that: (1) the state court found defendant's actions constituted

1. This statute reads in pertinent part as follows:

    18–4–405. Rights in stolen property. All property obtained by theft ... shall be restored to the owner.... The owner may maintain an action ... against the taker thereof ... [and] ... [i]n any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees....

2. Paragraph E of the June 8 Order reads as follows:

    On Plaintiff's Fifth Claim for Relief, the Court finds:

    1. In favor of Plaintiff Tague & Beem, P.C., and against Defendant Janet S. Tague in the deposits and awards treble damages to Plaintiff Tague & Beem, P.C., on such sum pursuant to C.R.S. Section 18–4–405, together with costs and attorney fees pursuant to C.R.S. Section 18–4–405. The Court makes the specific finding that Janet S. Tague's action concerning the deposits constitutes "theft" as such term is defined under Colorado law.

    2. Also on Plaintiff's Fifth Claim for Relief, the Court finds in favor of Tague & Beem, P.C., and against Defendant Janet S. Tague in the amount of $6,140.00 on Plaintiff's claim of altered checks. The Court awards treble damages to Plaintiff Tague & Beem, P.C., on such amount pursuant to C.R.S. Section 18–4–405 together with costs and attorney's fees which are permitted under said statute. The Court specifically finds that Janet S. Tague's actions concerning the alterations of such checks constitute "theft" as that term is defined under Colorado law.

    3. On the Plaintiff's Fifth Claim for Relief, judgment shall enter in favor of Plaintiff Tague & Beem, P.C., and against Defendant Janet S. Tague in the total amount of $49,493.70, plus costs and attorney's fees.

    The July 17 Order states in part that:

    3. The Court finds that the various issues set forth in the Claims for Relief, and particularly the Fourth and Fifth Claims were inextricably intertwined with all other issues in the case. Hence, absent Mr. Tague's involvement in the case, it is clear that at least 75% of the attorney's fees and 90% of the costs would have been expended with respect to the claims against Mrs. Tague, and the Court so specifically finds.

    IT IS THEREFORE ORDERED that Plaintiffs have, as and for an additional judgment against Defendant Janet S. Tague, the total of $20,261.44 as and for attorneys' fees and costs.

"theft" as defined under Colorado Statute in a prepetition civil action in which the June 8 and July 17 Orders entered; (2) defendant was responsible for handling plaintiff's cash deposits while employed as plaintiff's bookkeeper and converted some of those deposits to her own use and benefit; and (3) defendant altered the payee or amount on certain checks, already signed by one of plaintiff's principals, to her own use and benefit.

Defendant's answer to the amended complaint maintains that dismissal of plaintiff's claims remains appropriate under Rule 12(b)(6). In the alternative, defendant requests summary judgment on the claims asserted or partial summary judgment as to the dischargeability of the treble damages, fees and costs at issue.

## II.

The parties' pleadings and arguments frame three legal issues for determination: (1) The threshold issue of whether the amended complaint states a claim for relief under Sections 523(a)(2), 523(a)(4) or 523(a)(6); (2) whether principles of *res judicata* or collateral estoppel support summary judgment on such claims; and, (3) whether the treble damages, attorneys' fees or costs awarded plaintiff are dischargeable as a matter of law.

## III.

In adjudicating defendant's motion to dismiss the Court is limited to consideration of only the pleadings, including the June 8 and July 17 Orders attached as Exhibit A to the amended complaint. Under Rule 12(b)(6), the Court is obligated to accept all well pled facts in the amended complaint as true for purposes of determining whether such facts state a cognizable claim for relief. *See In re Edmonds*, 924

F.2d 176, 180 (10th Cir.1991). Merely conclusory statements alleged or relied on as fact are not afforded the same consideration. *See Cayman Exploration Corp. v. United Gas Line Pipe Co.*, 873 F.2d 1357, 1359 (10th Cir.1989). Furthermore, the Court is mindful of the presumption created by the Federal Rules against rejecting pleadings for failure to state a claim. *Id.*

### A.

Defendant challenges plaintiff's claim under Section 523(a)(2), a claim purportedly based on defendant's actual fraud, as lacking in facts sufficient to state a claim for relief. Defendant maintains that neither the amended complaint nor the state court's findings in the June 8 Order reflect facts sufficiently specific to satisfy the requirements of Bankruptcy Rule 7009(b) and must therefore be dismissed.[3] Plaintiff responds that a finding of fraud is inherent in the state court's finding of "theft."

Plaintiff argues that because defendant was a party to the suit in which that order entered, she is already well apprised of the specific facts supporting plaintiff's claim and has been appropriately placed on "notice" of plaintiff's claim in compliance with Bankruptcy Rule 7008. Plaintiff contends that dismissal of their Section 523(a)(2) claim is therefore unwarranted.

The parties' arguments are equally pertinent to plaintiff's claim under Section 523(a)(4),[4] a claim in which fraud is an essential element when premised on embezzlement or larceny. *In re Wallace*, 840 F.2d 762, 765 (10th Cir.1988), defines embezzlement under federal common law for purposes of Section 523(a)(4) as the *fraudulent* appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully

3. The pertinent rules under the Federal Rules of Civil Procedure are applicable in this proceeding by incorporation under the Bankruptcy Rules.

4. Although plaintiff alleges an employee-employer relationship between the parties in the amended complaint, there is no indication in the amended complaint or any contention in plaintiff's responsive briefs or arguments that

such relationship is a fiduciary one for purposes of Section 523(a)(4), only that it establishes grounds for a claim premised on embezzlement as well as larceny. Neither Colorado law nor the federal standards applicable under Section 523(a)(4) would support plaintiff's argument of a fiduciary relationship. *See, e.g., Gill v. People*, 139 Colo. 401, 409–10, 339 P.2d 1000 (1959); *In re Currin*, 55 B.R. 928, 932 (Bankr.D.Colo.1985).

come. On the other hand, larceny is distinguished from embezzlement only as to the original taking and possession of property being unlawful rather than authorized. *See In re Burgess*, 106 B.R. 612, 622 (Bankr.D.Neb.1989).

■ Tenth Circuit law is clear that only fraud in fact, not merely fraud implied in law or a showing of wrongfulness or dishonesty, is sufficient to establish a claim under either Section 523(a)(2) or 523(a)(4). *See In re Mullet*, 817 F.2d 677, 682 (10th Cir.1987); *In re Black*, 787 F.2d 503 (10th Cir.1986). Accordingly, a complaint asserting a claim under either Code provision must reflect facts indicative of actual fraud in order to withstand a motion to dismiss pursuant to Rule 12(b)(6). Furthermore, all facts and circumstances constituting the fraud must be stated with particularity. Fed.R.Civ.P. 9(b); *Rodriguez v. Bar–S Food Co.*, 539 F.Supp. 710, 720 (D.Colo. 1982). Failure to satisfy these requirements justifies dismissal where leave to amend a complaint is not warranted. *See Cayman Exploration, supra.*

■ The Court is persuaded that defendant's assessment of the legal insufficiency of plaintiff's claims premised on fraud is correct. Even when coupled with the other allegations in the amended complaint, the Court finds plaintiff's allegation of "theft" as the factual underpinning for actual fraud insufficient to support a claim for relief under either Section 523(a)(2) or (a)(4).

Plaintiff reasons that "theft" as defined under Colorado's criminal code necessarily encompasses the former common law crimes of embezzlement and larceny and therefore by definition includes fraud as an essential element.[5] Plaintiff contends that merely alleging "theft" is therefore sufficient to allege fraud for purposes of this proceeding. Plaintiff's reasoning is attenuated at best, even as a basis for fraud implied in law, and certainly not as grounds for the fraud in fact essential to a claim under Sections 523(a)(2) and 523(a)(4) of the Bankruptcy Code. It is not supported by any findings in the June 8 order. It is not supported by any well-pled factual allegations within the amended complaint. Furthermore, it is not substantiated by Colorado law regarding theft.

■ Under Colorado case law, conversion is held sufficient for purposes of theft prosecution. *See Hucal v. People*, 176 Colo. 529, 534, 493 P.2d 23 (1971). *See also McGuire v. People*, 83 Colo. 154, 262 P. 1015 (1928) (failure to pay over money collected for another is conversion). Where theft is premised on deception under Section 18–4–401, C.R.S., the requisite mental state, an intent to defraud, must be established by proof that intentional misrepresentations were made to the victim which caused him to part with something of value in reliance on those misrepresentations. *See People v. Norman*, 703 P.2d 1261 (Colo.1985); *People v. Warner*, 801 P.2d 1187 (Colo.1990). Similar standards apply to the pleading and proof of actual fraud under Section 523(a)(2) and (a)(4). *See In re Mullet, supra; In re Black, supra.*

Nothing on the face of the June 8 or July 17 Orders suggests that defendant misappropriated plaintiff's property by deception. More significantly, plaintiff raises no specific allegations in the amended complaint which state or infer that defendant deceived plaintiff through intentional misrepresentations on which plaintiff reasonably

---

**5.** The statutory application of "theft" is encompassing. Section 18–4–403, C.R.S., provides:

If any law of this state refers to or mentions larceny, stealing, embezzlement . . ., false pretenses, . . ., that law shall be interpreted as if the word "theft" were substituted therefore; and in the enactment of sections 18–4–101 to 18–4–103 it is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes, thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes.

In addition, Section 18–4–401, C.R.S., defines "theft" in pertinent part as follows:

(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of thing of value. . . .

relied or otherwise in appropriating plaintiff's property to her own use.[6]

■ Merely alleging "theft" does not state a claim for fraud. Further, the statutory definition of theft is not sufficient to satisfy the proof of common law fraud, embezzlement and larceny. *See Hucal v. People, supra; In re Lane,* 115 B.R. 81, 83 (Bankr.E.D.Va.1990). Thus, such an allegation is clearly insufficient for pleading purposes under Rule 9(b).

■ Plaintiff's contention that defendant's prior knowledge of the basis for the claims at issue here substitutes for proper allegation of well-pled facts ignores the clear import of not only Rule 9, but Rule 8 as well. As noted by the Tenth Circuit in a nonbankruptcy context involving pleading issues and potential consequences analogous to those in this case,

> We recognize that the policy of simplicity in pleadings which underlines the Federal Rules of Civil Procedure requires a court to read Rule 9(b)'s requirements in harmony with rule 8's call for a "short and plain statement of the claim" which presents "simple, concise and direct allegations." Fed.R.Civ.P. 8. Nevertheless, we believe that the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such way that will give the defendant, *and the trial court,* clear notice of the factual basis of the predicate acts. (Emphasis added.)

*Cayman Exploration v. United Gas Line Pipe Co.,* 873 F.2d at 1362.

This proceeding involves the discharge of a substantial judgment debt. The potential consequence to defendant is severe. Plaintiff bears the burden under Section 523(a) not only to prove its claims, but, in the first instance, to plead them sufficiently. Rule 9(b) defines sufficiency in this context as particularity. Both the Court and defendant must have notice of the facts upon which plaintiff relies as the basis for nondischargeability, not merely their legal theories and conclusions, particularly where fraud is at issue. Rule 8 requires no less.

Plaintiff was placed on notice of the alleged deficiencies in their complaint and was afforded an opportunity to cure them. Plaintiff nonetheless continues to insist, as did the unsuccessful plaintiff in *Cayman,* that "notice" pleading rules justify their minimal allegations. The amended complaint fails to include specific facts indicating fraud and thus fails to state a claim for relief in which actual fraud is an essential element. Under the circumstances, further leave to amend is not warranted and the court is compelled to dismiss plaintiff's claims under Section 523(a)(2) and 523(a)(4).

### B.

■ The amended complaint states a colorable claim for relief under Section 523(a)(6).[7] The facts alleged reflect the critical elements of a claim for conversion, i.e., an unauthorized act of dominion or ownership exercised by one person over the personal property of another. *See In re Anzman,* 73 B.R. 156, 168 (Bankr.D.Colo. 1986), *citing Byron v. York Inv. Co.,* 133 Colo. 418, 296 P.2d 742 (1956). Conversion which is also shown to be both willful and malicious may justify nondischargeability under Section 523(a)(6). *In re Compos,* 768 F.2d 1155, 1157 (10th Cir.1985); *In re McGinnis,* 586 F.2d 162, 163 (10th Cir. 1978); *In re Branch,* 54 B.R. 211, 217 (Bankr.D.Colo.1985). Plaintiff's allegation of "theft" together with the remaining fac-

---

**6.** The Court is aware of only one case in which a bankruptcy court reached a contrary conclusion in a nondischargeability proceeding involving arguably similar facts, albeit facts presented as part of extensive and conflicting evidence at trial rather than in the context of a motion to dismiss. *See In re Burgess, supra,* 106 B.R. 612. The court in *Burgess* concluded that the co-debtors' conduct in that case constituted embezzlement and larceny under Section 523(a)(4) because the debtors knowingly and willfully misappropriated funds without authority, which the court found supported an inference of fraud under the circumstances. The court's inference, however, was obviously based on the wrongfulness of the defendants' conduct, not on the actual fraud standard applicable in this jurisdiction.

**7.** Rule 9(b) is inapplicable to this claim as it does not include fraud as an essential element.

tual allegations in the amended complaint satisfy these criteria for pleading purposes.

■■■■ The basic elements of "theft" under Colorado statute parallel the standards applied in the Tenth Circuit to determine whether an injury is willful and malicious under Section 523(a)(6). Section 18–4–401, C.R.S., minimally requires knowing and volitional misappropriation of another person's valuable property, coupled with an intent to deprive the other person of its use or benefit, regardless of whether such taking is merely unauthorized or accomplished by threat or deception. *See People v. Archuleta,* 180 Colo. 156, 503 P.2d 346 (1972). The criteria for willful and malicious injury under Section 523(a)(6) are similar in substance. "Willfulness" requires only that a debtor intentionally perform the basic act complained, *i.e.,* that it be a deliberate and volitional act. *See In re Posta,* 866 F.2d 364, 367 (10th Cir.1989); *In re Anzman,* 73 B.R. at 167–8. "Maliciousness" requires a showing of either: (1) a specific intent to injure; or, (2) some deliberate conduct with actual knowledge or the foreseeability that injury will necessarily result from that conduct. *In re Posta, supra; In re Compos, supra.* Taking another's valuable property knowingly and volitionally, intending to deprive them of its use and benefit, clearly falls within the scope of this standard. *In re Branch, supra.*

■■■■ Contrary to defendant's contentions, abstract or moralistic notions of the egregiousness or wrongfulness of a debtor's acts are not the predicate of maliciousness under Section 523(a)(6). Actual malice is not required. *Id.* Thus, the fact that plaintiff's state court exemplary or punitive damages were awarded based upon Colorado's theft statute as opposed to Section 13–21–102, C.R.S.,[8] is irrelevant here. It does not negate plaintiff's ability to state a claim for willful and malicious injury based

on volitional conduct causing intended or foreseeable injury.

### IV.

Plaintiff and defendant both contend that *res judicata* or collateral estoppel support summary judgment in their favor.[9]

Defendant argues that in the parties' prior state court litigation, plaintiff failed to use that forum to plead and prove any claim specifically premised on malicious or aggravated conduct. Defendant maintains that this failure raises a *res judicata* bar to the plaintiff's Section 523(a)(6) claim and to any other issues related to such claim that plaintiff could have raised in state court.

Plaintiff argues that *res judicata* does not bar their claim here. Moreover, it maintains that both *res judicata* and collateral estoppel preclude defendant from challenging the state court judgment and therefore support summary judgment in plaintiff's favor.

### A.

■■■■ As a general rule, *res judicata* may be applied in bankruptcy matters to preclude litigation of all claims and defenses previously available to litigants in a state court lawsuit in which final judgment entered. This rule applies regardless of whether such matters were raised or determined in the parties' prior litigation. *In re Werth,* 54 B.R. 619, 622 (D.Colo.1985), *aff'g* 37 B.R. 979 (Bankr.D.Colo.1984). *See also In re Prospero Associates v. Burroughs Corp.,* 517 F.Supp. 658, 660 n. 6 (D.Colo. 1981), *aff'd,* 714 F.2d 1022 (10th Cir.1983) (applying Colorado law on *res judicata*). *Res judicata* enables the bankruptcy court to give full faith and credit to a prior state court judgment in assessing whether a "claim" or "debt" exists in a bankruptcy case.[10] *In re Werth, supra. See general-*

---

8. As a general rule, exemplary damages are available in a conversion action under this civil statute if the taking of property constitutes wanton and reckless disregard of the injured party's rights. *See Mari v. Wagner Equip. Co.,* 721 P.2d 1208 (Colo.App.1986).

9. Given the dismissal of plaintiff's Section 523(a)(2) and (a)(4) claims on other grounds, the parties' preclusion arguments remain pertinent only to plaintiff's Section 523(a)(6) claim.

10. A "debt" for purposes of Section 523(a) means liability on a claim. 11 U.S.C. § 101(11). A "claim" in turn includes a right to payment,

*ly Bolling v. City & County of Denver,* 790 F.2d 67, 68 (10th Cir.1986).

■ Conversely, *res judicata* is not applicable to claims and defenses which concern the dischargeability of a claim previously reduced to judgment in a state court. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *See In re Werth, supra.* This is so even if the claims and defenses could have been raised in their earlier lawsuit, but were not. *See Brown v. Felsen, supra.*

■ Defendant's challenge to the status of the treble damages, fees and costs awarded by the state court as a "debt"[11] concerns liability, not dischargeability. Furthermore, defendant's argument that judgment for these damages was based on an erroneous legal standard is improper in the context of this proceeding. The defendant's concern over a finding of "theft" rather than on the civil standard for such damages under Section 13–21–102, C.R.S. is not well-founded. First, this Court is neither obligated nor permitted to second-guess the state court's wisdom in entering its judgment. *In re Tsamasfyros,* 940 F.2d 605 (10th Cir.1991); *In re Chapman,* 125 B.R. 284, 286 (Bankr.S.D.Calif.1991). The state court judgment is final. It establishes the defendant's liability to the plaintiff for the payment of damages. Accordingly, defendant's collateral attack on the judgment is not a viable defense to plaintiff's Section 523(a) claim and is barred by *res judicata. Cf. In re Wallace,* 840 F.2d at 765; *In re Tsamasfyros,* 114 B.R. 721, 725 (D.Colo.1990), *aff'd* 940 F.2d 605 (10th Cir. 1991) (deciding similar issues on collateral estoppel grounds). Second, Section 18–4–405 specifically provides a civil remedy for property owners whose property was taken by theft.

**B.**

■ Unlike *res judicata,* collateral estoppel treats as final only those factual questions actually and necessarily decided in the parties' prior litigation which are identical to those at issue in a subsequent dischargeability proceeding. *Brown v. Felsen,* 99 S.Ct. at 2213, n. 10. *See also Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). The Tenth Circuit standard for collateral estoppel is stated as follows:

> [C]ollateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.

*In re Wallace,* 840 F.2d at 762.

■ Identity of issues in this context means a substantive identity between the pertinent issues in the two proceedings, not in the precise terms in which the issues or the parties' claims are described. *Id.* at 765; *In re Mueller,* 34 B.R. 869, 873 (Bankr.D.Colo.1983). Thus, preclusive effect is not given to identical factual questions which were not at issue or were decided, but unnecessary to the court's ultimate conclusion in the first action. *In re Lombard,* 739 F.2d 499 (10th Cir.1984). In addition, collateral estoppel applies only if the evidentiary standard applied to the factual questions in the first action was equal to or greater than that applicable to a Section 523(a) claim. *See generally In re Owens,* 123 B.R. 434, 438 (Bankr.M.D.Fla.1991) (summarizing the law in a case involving similar facts, but finding collateral estoppel inapplicable on grounds not pertinent in this jurisdiction).

The United States Supreme Court suggests in *Grogan* that in cases where collateral estoppel is at issue, independent assessment of the nondischargeable character of actual damages may be appropriate, even where the actual damages are based upon the same underlying conduct as the non-compensatory and punitive damages.

based on a judgment or otherwise. *See* 11 U.S.C. § 101(4).

11. Defendant's argument focuses on the introductory language under Section 523(a) which addresses "discharge [of] an individual debtor from any debt ...".

*Grogan v. Garner,* 111 S.Ct. at 657, n. 2, *citing In re Rubin,* 875 F.2d 755, 758, n. 1 (9th Cir.1989). This Court finds the distinction between actual and punitive damages critical in this case given the unusual interplay of civil and criminal standards at issue, both substantive and evidentiary.

Extensive language in *Grogan* raises questions concerning the continued viability of the Tenth Circuit's application of a clear and convincing standard of proof necessary to establish nondischargeability under Section 523(a)(6). *See In re Thurman,* 901 F.2d 839 (10th Cir.1990) (confirming that *Compos* and *Posta* control in this jurisdiction). *Grogan's* broad holding extends well beyond the scope of the Section 523(a)(2) issue actually presented for determination[12]. Further, *dicta* in a recent Tenth Circuit decision indicates that this circuit may accept the breadth of the Grogan decision, noting that the " 'preponderance of the evidence' standard, ..., applies to all exceptions from the dischargeability of debts contained in Bankruptcy Code Section 523(a), including the nondischargeability for fraud provision." *First National Bank of Gordon v. Serafini (In re Serafini),* 938 F.2d 1156 (10th Cir.1991) (the issue before the court was the burden of proof required in Section 727(a)(2) fraud discharge action), citing *Grogan,* 111 S.Ct. at 661. However, as *dicta* it does not change the Tenth Circuit law binding on this Court until there is an actual decision on the issue.[13] Moreover, the Court is persuaded that retention of a clear and convincing standard in Section 523(a)(6) matters is consistent with *Grogan.*

One of the fundamental reasons prompting the Supreme Court's decision in *Grogan* was that differing standards of proof applicable to fraud claims at the state level and at the bankruptcy court level created inconsistencies prejudicial to creditors. This prejudice was suffered by those whose claims had not been reduced to judgment prior to a debtor's bankruptcy or whose pre-petition judgments were premised on a standard of proof lesser than that applicable under Section 523(a)(2). If, as *Grogan* suggests, the dischargeability of punitive and other noncompensatory damages related to an otherwise nondischargeable debt is best addressed under Section 523(a)(6), then there is no compelling reason to adopt a lower evidentiary standard under this provision based upon collateral estoppel concerns. A prepetition claim for damages based on intentional or aggravated conduct as adjudicated under the typical state exemplary damages statute or pertinent criminal code is generally subject to a heightened evidentiary standard. *See, e.g.,* Section 13–25–127, C.R.S. (proof beyond a reasonable doubt required for exemplary damages in civil action even though a preponderance standard applies to other relief claimed); *Gill v. People,* 139 Colo. at 413–414, 339 P.2d 1000 (elements of embezzlement under former Colorado criminal statute must be established beyond a reasonable doubt). Thus, the higher standard would already be met in almost all instances.

The Court concludes that the adoption of a preponderance standard under Section 523(a)(6) would be inconsistent with *Grogan's* logic and rationale, notwithstanding the opinion's all-encompassing language. Application of the preponderance standard would provide litigants with incentive to defer pursuit of certain claims in state court when a bankruptcy appears inevitable, allowing them to proceed under a lesser standard of proof to establish their

---

12. A number of courts in the wake of *Grogan* have applied a preponderance standard to Section 523(a) claims other than those specifically premised on Section 523(a)(2)(A), including those under 523(a)(6), in reliance on this *dicta. See, e.g., In re Miera,* 926 F.2d 741 (8th Cir. 1991); *In re Yanks,* 931 F.2d 42 (11th Cir.1991); *In re Cooper,* 125 B.R. 777 (Bankr.N.D.Ill.1991); *In re Davis,* 124 B.R. 831 (Bankr.D.Kan.1991); *In re Price,* 124 B.R. 791 (Bankr.W.D.Mo.1991).

13. A recent decision by Judge Kane, *In re Hansen,* 131 B.R. 167 (D.Colo.1991), addressed the dischargeability of a Section 523(a)(6) claim. The decision is not dispositive because the Debtor confessed to a state court judgment admitting to acts which necessarily constituted an admission of fraud and willful/malicious injury. The standard of proof was not actually at issue or specifically addressed as to the Section 523(a)(6) claim.

right to special damages based on intentional conduct.

■ In the instant case, the Court finds that collateral estoppel is not appropriate. The Court acknowledges that the factual issues relevant to the "theft" claim and willful and malicious conversion in the context of Section 523(a)(6) are substantively analogous. Also, the parties do not dispute that the final judgment evidences actual litigation of the requisite elements of "theft." However, the April 11 judgment, related June 8 and July 17 Orders, and the underlying complaint are the only documents from the state court proceeding submitted for the Court's review. Notwithstanding the similarity in the factual issues previously resolved, the Court finds this record insufficient to establish plaintiff's Section 523(a)(6) claim by collateral estoppel.

The state court pleadings raise more questions than they answer, particularly without the benefit of a partial transcript which might enable this Court to make the findings and conclusions necessary to enter judgment on collateral estoppel grounds. *See In re Wallace,* 840 F.2d at 764, citing *In re Franklin,* 726 F.2d 606 (10th Cir. 1984). *See also In re Tapper,* 123 B.R. 594 (Bankr.N.D.Ill.1991) (court should look to entire record, not just the judgment, in determining whether collateral estoppel elements are satisfied). The Court cannot infer what evidentiary standards were applied by the state court due to the insufficient record. Both the underlying complaint and the June 8 Order reflect explicit reliance on "theft" as the basis for damages under Section 18–4–405, but there is no indication of the evidentiary standard supporting such conclusion. Further, they do not reflect any substantive or evidentiary standard applied to determine defendant's liability for actual damages which could have been established by a preponderance of the evidence. Moreover, it is unclear whether the state court's finding of

"theft" was necessary to its decision on actual damages [14] as well as to its award of punitive damages. *See In re Lane, supra; In re Taite,* 76 B.R. 764, 772 (Bankr.C.D.Calif.1987) (civil and criminal standards for liability not always identical); *Sunco Sales, Inc. v. Latch (In re Latch),* 58 B.R. 596, 598 (S.D.Fla.1986), *aff'd,* 820 F.2d 1163 (11th Cir.1987) (special interrogatories critical in assessing elements considered by jury in determining liability under civil theft statute).

This Court cannot merely assume that plaintiff was held to a "beyond a reasonable doubt" or a heightened civil standard for criminal conversion in asserting their right to statutory damages. Accordingly, the Court cannot assess whether the state court applied the same evidentiary standard in reaching its conclusions on both actual and punitive damages.

In sum, the Court finds two factors preclude application of collateral estoppel: (1) uncertainty concerning the basis for the state court's award of actual damages; and (2) lack of any information on the evidentiary standard applied in the state court's conclusion that defendant's conduct constituted "theft." Therefore, the Court cannot find collateral estoppel applies to the determination of willfulness and maliciousness as to any injury caused by defendant's conduct. Accordingly, plaintiff is not entitled to summary judgment on their Section 523(a)(6) claim, nor is defendant entitled to judgment on this claim while critical factual issues remain unresolved.

### V.

■ The parties' final arguments focus solely on the nondischargeability of exemplary or punitive damages. Their arguments generally reflect the split of authority in this issue. In this district, punitive damages are not dischargeable if the court finds such damages are warranted by applicable law and facts in the case. *E.g., In re Austin,* 93 B.R. 723 (Bankr.D.Colo.1988);

**14.** The language of Section 18–4–405, C.R.S., suggests that actual damages under this statute are not the same as restitution of the property stolen, raising the question of whether the court's decision on liability for actual damages was decided on another basis. *See In re Allen,* 724 P.2d 651 (Colo.1986).

*In re Dunston,* 117 B.R. 632 (Bankr. D.Colo.1990); *see generally, In re Wallace,* 840 F.2d 762 (10th Cir.1988). The conclusions in these various decisions, however, have no immediate relevance here absent a determination that the state court judgment has collateral estoppel effect or that plaintiff is entitled to recovery of something more than actual damages upon proper proof in this proceeding. Until plaintiff's claim for treble damages, fees and costs is factually established and properly at issue, the Court finds determination of the dischargeability of such claim unnecessary and defendant's request for partial summary judgment premature.

In accordance with the foregoing, the Court ORDERS that defendant's motion to dismiss is GRANTED as to plaintiff's claims under 11 U.S.C. §§ 523(a)(2) and 523(a)(4), and is DENIED as to plaintiff's claim under 11 U.S.C. § 523(a)(6).

FURTHER ORDERED that summary judgment on plaintiff's claims is DENIED.

FURTHER ORDERED that defendant's motion for partial summary judgment is DENIED.